Good morning, Judge Reinhart, Judge McEwen, and Judge Fletcher. My name is Jeffrey D'Angelo. I'm an attorney from Bozeman, Montana. This is my third time before this court. At the last, interesting, at the last, the second Ninth Circuit oral arguments, the last five minutes were spent between Mr. Schramm and one of the judges speaking about qualified immunity. And there was some persuasion that it should apply in this case. And the way I just listened to those arguments recently, and the notion was just rejected. It was not ruled on by the court any of the times it's raised. And here we are the third time before this court on a holding that qualified immunity bars this suit. Would you prefer a holding that there was no constitutional violation? Absolutely not. And that's kind of where we start with this case. We've got Vlandis v. Kline in 1973. It followed Roberts v. the Board of Regents in New Mexico, a State Supreme Court case. And the holding in Vlandis was not unclear. They said, we hold that a permanent, irrebuttable presumption of non-residency is a violation of the due process clause. Now, the Ninth Circuit, in the case of Vlandis v. Kline, has said that the court in 2001 said, and I'm quoting, under Vlandis v. Kline, as limited by Weinberger v. Selfie, a State violates due process where it creates a university tuition rate scheme that purports to be concerned with residency, but then applies an irrebuttable presumption precluding these seeking to meet its residency the opportunity to show facts clearly bearing on the issue. Now, we go to Montana, 1992. This is some 19 years later. And at that time, Montana began a practice. And it was not the written rule. The written rule, the administrative regulations in Montana are constitutional. They describe a rebuttable presumption. However, the evidence that we've been able to gather over the now going on eight years of this case makes it absolutely 100 percent clear that Montana, despite the written rule, is applying an irrebuttable presumption. My favorite quote comes from my alma mater law school. Once classified as a non-resident, the student retains that status for the three years of law study. No question that's an illegal, irrebuttable presumption. Selfie did not modify Vlandis to the extent that it would allow that. And after eight years of litigation, I'm ashamed to say that we have been able to do nothing to stop it. It continues today, and it will continue. The court, the error it made is an error of law. What it did when it dismissed this case based on qualified immunity was looked at the students and essentially said, could a reasonable person have found these students to be non-residents? That's essentially the question they answered. Not the question that you answer when you do a qualified immunity analysis. You look to whether the defendant's conduct was objectively reasonable based on the then existing law. The then existing law was very clear. No question about it. In 1992, when this process was implemented, the counsel to the defendant, Mr. Leroy Schramm, actually advised them that this may be illegal. Mr. the dean of the law school, Ed Eck, was asked about his discovery responses in this case, and he put in his discovery responses that Leroy Schramm told him that the statement in the catalog was inconsistent with prior Supreme Court holdings and reluctantly agreed that it would be unlawful. Given that, the practice still continues, and it has each time we got dismissed up to the Ninth Circuit and remanded to the point now where it's surprising to read the response brief because it suggests that based on salvie, this might be okay. Well, you've got two named plaintiffs. The case for one of them, Ms. D'Angelo strikes me as weak. The case for Mr. Gibson strikes me as stronger. Could you make the argument as to why you think that the irrebuttable presumption was applied in Mr. Gibson's case? Yes, and I agree. Mr. Gibson's case is stronger. However, Ms. D'Angelo's case is more typical. If her case is more typical, you've got a lot of people, in my view, that aren't going to win. Well, the reason why it's typical is people are told you cannot vote, as an analogy, and so they go somewhere where they can. Both of these individuals, what we do know today, were Montana residents. And I say that because after they graduated, after they completed their studies, they continued to live in Montana, Mr. Gibson still does. Mr. Gibson was denied because the letter on its face, under a summary judgment standard, so you view that in the light most favorable to the plaintiffs, clearly the letter says that they did not count any time because he was a student, period. There's one other side comment in there, but that letter on its face says, from Richard Crofts to Mr. Gibson, we do not count any time you're a student for the 12-month waiting period. You're a full-time student. Any time you're a full-time student. Any time you're a student above six credits. So consider full-time anything more than six credits. If you're part-time, six or less. And the Supreme Court has said that there is no legitimate interest, or that people have a right to pursue education, and you can't use that as a disqualifying factor. In Vlandis, the state argued three different reasons why an irrevocable resumption should be allowed, and they're kind of the same themes you can see in the response brief here, but they were rejected by the Supreme Court in 1973, and they're just as offensive now. Bobby Gibson moved to Montana. He did everything consistent with being a resident. He knew that he was being mistreated. He pursued that. And he was told, just like everyone else is, our policy is set in stone. And unfortunately, that's the way it is in our state. The legal question before the court today is whether or not the qualified immunity defense applies. It's a de novo review, and it's a review about the defendant's conduct, Mr. Croft's conduct in writing the letter, and there's evidence throughout the briefs of all of the irrevocable presumptions they found. What we thought was happening in the beginning of this case was what we called the six-credit-hour rule, that if you took more than six credit hours, you were considered to be living somewhere else, but certainly not counting towards the 12-month waiting period. What we found is every single factor in this balancing test, because on its face it is a balancing test, every single factor was used as an irrevocable presumption. So you could literally drop below six credit hours, get your driver's license, vote, but if you did any other thing inconsistent, you owned a car in Washington, but you did everything else, you were disqualified, it was an irrevocable presumption. And the real crux of this is not whether or not each student is going to prevail, it's they're denied the right to even show evidence. And Mr. Gibson was, he was not, none of the evidence was considered at any level. Mrs. D'Angelo was told don't even apply, because we are not going to consider it, and that's fairly consistent with what most people did. I mean, you see it in the newspaper, you see it in the law school catalog, you see it in the printed materials of the university, and if you do have communication, you get a letter saying this policy is set in stone, there's no two ways about it. We would ask that the court conduct the de novo review and hold, as it did in 2001, that Vlandis was limited by Salfi, but only to the extent that it allows some irrebuttable waiting period, which plaintiffs here have never disputed. The first 12 months, they can't be in state residence. That's conceded, that's all Salfi did to Vlandis. But after that, would a reasonable official 19 years later have any question that an irrebuttable presumption and applying that to students would be unlawful? And the answer is clearly it would. It was done, there's overwhelming evidence it was done, when the view, when the evidence is viewed in the light most favorable to the plaintiffs. And based on that, the decision of the lower court was incorrect. I don't know if you have any other questions for me. Thank you. If it may please the court, my name is Leroy Schramm, I'm legal counsel for the now retired, I'm only taking this case because it's been dragging on for six years, for the Montana University System related plaintiff, or defendants. Could you please keep your voice up? Pardon? Could you please keep your voice up? I'm very sorry. No, that's okay. I think in the briefs, I took issue with a lot of the characterizations that a fact that you heard today, and it's impossible to go through and quarrel with them. But I think the main thing, the main legal point here, with the summary judgment issue, is that whether or not, and we do not acknowledge this and deny it, and I think we've shown that the university does not use an irrebuttable presumption as a general rule, but I don't think in this case, because of the way the qualified immunity analysis works under Saussure versus Katz, and Anderson versus Creighton, that it creates a genuine issue of material fact. Here's a question I've got under Saussure. Can we get to the question of qualified immunity without deciding first that the policy as applied by the university is unconstitutional? I think you have to get to the question first. That's the first question. Yeah, but the district judge did not do that. Well, he certainly did, and I don't have to explain to you the Saussure, I don't know if it's Saussier or Saussure, but whichever it is, the template that is laid out or the order of battle or whatever you want to call it. And by the way, when I, not Googled, but shepherdized this two or three days ago, Saussure, they just accepted on March 24th the case, and they specifically directed briefs on the question whether it should be overturned. But that's just an aside. This version of Saussure that we're now discussing may not survive. Because of the very issue we're discussing is that you can't get to qualified immunity without answering the constitutional question. Well, he did answer the constitutional question. The constitutional question is did these students, were they deprived of a constitutional right? Were they really residents who were classified as non-residents? And certainly in D'Angelo's case, if you read the decision, he says she had no right to be a resident. That's the constitutional violation. That's step one in the Saussure test. So qualified immunity applies without a doubt. Now, I think in the second case, Gibson's case, and his case is more colorable, obviously, because he's a former Montan, 14 years absent from the state, but at least he's coming back. And the judge, the district court, I would say conflates the tests. No, I would read it differently. I think he skipped over it in Gibson's case. I looked hard, and I can't find a clean statement of unconstitutionality or constitutionality. He moves straight to qualified immunity. Well, he does. And, of course, this is the exact criticism that Justice Breyer and numerous others have with this straitjacket. And what do we do in this case? I mean, you can remand it and say you've got to make a finding. But, first of all, we don't have – this case has been going on for six years. There's never been – I think I saw you six years ago. Yes, you did. Yes, I remember. I remember. I don't know about you. I was not quite as gray at that time. I can't remember whether you were or not. I was 13 years old at the time. Anyway, now I've lost my train of thought. Let me pick it up this way. Could you address the question, assuming for the moment that Saussure requires us to address the question of constitutionality before reaching the question of qualified immunity, which it does now, may not forever, but assume that that's the governing law. Could you tell us why, in Mr. Gibson's case, you think that an irrebuttable presumption was not applied? That letter from Crofts kind of sounds like an irrebuttable presumption on the six-credit rule. That letter from Crofts is basically a restatement of the policy with the preamble to the policy, which is this is a presumption that while you are taking six credits or more than six credits, the 12 months doesn't run. And that's not really what it says. Well, it doesn't. It says you were taking more than six credits, and so the 12 months doesn't run. It doesn't run for any period of time to which you were enrolled for seven or more semester credits. But what? It doesn't say it's a presumption or unless something. It just says it doesn't run for any time in which you're taking seven credits. Well, but here's the quandary. Let's, I mean, and believe me, I struggled with this, too, and this conflates theory was the best I could come up with. But you end up in the same place because even if you say, okay, there was a, it appears, and maybe not, and we have testimony from Crofts saying, you know, his deposition testimony saying, no, I mean, I considered all these factors, but let's just say you say, okay, there was a constitutional violation here. Well, I don't know, there was an unconstitutional process in that sense. Whether the result was unconstitutional, whether someone was misclassified, that's hard to say because, I mean, this is a subjective thing that obviously you'd consider a lot of factors. Can I just, let's assume, if it's unconstitutional to have an irrebuttable presumption and if the credit limit is viewed as an irrebuttable presumption, I understand you wouldn't agree with that, but if it is in connection with this letter and, therefore, you say, well, with respect to Mr. Gibson, at least as he has alleged it, there is a constitutional violation, the difficulty I have is that the qualified immunity analysis really goes to whether, you know, the law was clearly established at the time and that sort of thing. Well, it was, and so how does that save the situation vis-a-vis Mr. Gibson? Well, but even assuming that, and certainly the district court judge was not using an irrebuttable presumption, he was looking at the facts, and so even if one could say, yes, I as, you know, you as a panel or you individually would say, if it were me, I would have made that person a resident. I mean, that doesn't answer the qualified immunity question. You have to take the further leap. Before you get to qualified immunity. Well, I want my question answered first. Okay. I said that there's a constitutional violation. If we found a constitutional violation because there's an irrebuttable presumption as we view the evidence, how then would that help in Mr. Gibson's case? Well, but is there an error? See, I don't know that it's an error. Take my hypothetical. Don't argue with my hypothetical. I said if there is a constitutional violation because in the case of Mr. Gibson, based on the letter, there's an irrebuttable presumption, where would that leave you? That would leave me with qualified immunity still applying because you go to test 2B, which says given the facts before you, how he came to the state, he didn't have a job, all those facts that we recited. You maybe could reach the opposite decision about residency, but you reach the decision that even without the irrebuttable presumption, it's reasonable. It's objectively reasonable to make him, to classify him as a nonresident, and you end up there. I mean, that's the quandary we're in, and this is, of course, why they're looking at it again. Because if you send it back and say, you know, look at this without an irrebuttable presumption or see if an irrebuttable presumption was applied, and I don't think it was, but the judge, we're going to have a bench trial in front of a judge who has already properly or improperly reached the dispositive question on the qualified immunity issue. I mean, you'd have to say, under the facts, no reasonable person, using an irrebuttable presumption or no irrebuttable presumption, no reasonable person could have classified Mr. Gibson, in the case we're talking about, as a nonresident. And I don't think you can get there. You're really saying, though, that first, you're not agreeing that even though the rule is unconstitutional, you're not agreeing that the act was unconstitutional, because you're saying that even if the rule is Mr. Gibson wouldn't have qualified had you not applied the rule. That is exactly what I'm saying, with a strong emphasis that we don't think we're applying the rule, even in spite of that literature. You're applying the rule. Yes. You've got it exactly right. You don't get to the qualified immunity question necessarily at all, because you say, look at all of the factors, and he still would not qualify, even without the rule. Yes, and that then bestows. So you do get to the qualified immunity question, if I'm understanding you correctly, because that's the decision. I thought your argument was that it was not a constitutional violation in his case because he would not be eligible in any circumstance, whether you applied the rule or not. Yes. That is what I said, although Judge Fletcher said, no, I don't think that. He didn't follow the order of battle here in this. He leaped to the climax. Let me ask you this, and we're all struggling with the same question here. Let me start with Judge McKeown's hypothetical, and that is to say we conclude that an irrebuttable presumption was applied to deny Gibson in-state tuition. You don't have to agree with that, but that's the hypothetical. Thank you for making me not agree like you did the last attorney. But the next question is, okay, having applied an irrebuttable presumption to deny, where do we go next? You're saying, but if there had been a different rule, that is to say a rule without an irrebuttable presumption, well, maybe he could constitutionally have been denied in-state status, but the very hypothetical says the rule was irrebuttable presumption. So you're now saying, well, the university could have had a constitutional rule, but the very hypothetical says they didn't have a constitutional rule. Are we required to give judgment to you just because the university could have had a constitutional rule but did not, denied somebody based on an irrebuttable presumption when the only rule in existence was unconstitutional? Nonetheless, your client's okay? Is that your argument? Well, if forced into that position, it's my argument. I mean, if you make me accept the first assumption, yes, that would be my argument. But the hypothetical assumes that that is the rule. And then you're saying, but it would be constitutional under some other rule, but the university did not, in fact, have. Well, it's either an irrebuttable presumption or a rebuttable presumption. And, I mean, we prevent, and my, decades ago when I was in law school and we studied Rule 56, my law professor said, well, we all know that there are significant and important facts that may or may not rise to the level of material facts. And I think where I'm saying whether or not there was an irrebuttable presumption isn't a material fact, but I think we've shown important facts. Why not? What? Well. Because we've already, because our judge, whether he's followed the absolute steps, and I think we're all focusing on Gibson here, because I think D'Angelo is pretty clear, but Gibson, well, maybe somebody, I mean, not everybody. But there's a rule that told everybody, don't bother to apply if you're taking a full seven-unit course. It's not going to be granted. And you told that to everybody. But that's not the facts, first of all. But, all right, let's forget that for the moment. I want to go back to Judge Fletcher's question, which is if you're forced to, as you say, to your final position, and you might have had some other rule or you might have considered other factors, but you excluded somebody because of an unconstitutional rule, and therefore it's unconstitutional, doesn't that answer your second question as well? You can't then, in your second question of qualified immunity, come back and look at facts that aren't relevant to the determination of unconstitutionality. Sure. You look at the facts, test 2B, you look at the facts that were available to the person making the decision, and even if they made the wrong decision. Well, even if they made an unconstitutional decision. Even if they made an unconstitutional decision, if it was objectively reasonable, as the judge has said it is, qualified immunity attaches. I mean, I know this is putting you in a spot. Well, how can it be objectively reasonable to make an unconstitutional decision unless it was unclear that that rule was unconstitutional? Because he, even if he used. He could have made a decision on a different basis. Yes, and he said he did. Well, that's the same thing as. . . That's the same issue as arose in whether the exclusion is unconstitutional. It's the same argument that we could have done it on a different basis. He said he did do it on a different basis. Well, then that's the argument that it's not unconstitutional because he did it on a different basis. The judge, for whatever reason, probably because it's a little closer case than D'Angelo, chose not to come down that hard and say he had no right. So he skipped to 2B. But what is going to be. . . First of all, before I run out of time, I do want to say we had before the court, and talk about these significant facts, the court. . . I mean, the non-residency classification process does not create any kind of straitjacket. The judge cited 8,000 students have changed from non-resident to resident over the years, sort of before and after and during the student supply. And a number of them we know and we showed and had before the court were full-time students, that they overcame the presumption. You know, one of the problems I'm having with this case, and we've kind of alluded to it, but this is coming up on summary judgment. And it sounds to me as though you're saying, well, there are a lot of facts in the record that favor you, but there are some facts in the record that favor them, and we're still in summary judgment. Yeah, but the facts that favor us are here unrebutted. No, they're not necessarily unrebutted. That is to say, the district judge says in the deposition Mr. Cross testifies and it's unrebutted or undisputed. Well, but I'm not sure it's undisputed. It's disputed in a sense by his very letter. So he can say in deposition, well, I considered all these other things, but his letter doesn't seem to say that. No, that's not the unrebutted facts I'm talking about. The unrebutted facts I'm talking about are the very facts that come from the student's deposition and about how you came to the state, when you came to the state, did you have a job, all of those. But those may be totally immaterial, depending on how we look at the case, because the question is not whether they could have been classified as nonresidents under some rule that didn't exist. The question might be, were they classified as nonresidents under the rule actually applied, which was to say maybe an irrebuttable presumption. And so there may be disputed facts as to whether or not the irrebuttable presumption was being applied. You have to. I think you have to, under qualified immunity, look at the qualified immunity test. Even if it was conflated, you have to look at it, because remember, you go back to Harlow and this whole line of cases. This is a state official who's being sued in his individual capacity. And what you're basically saying is, well, yeah, you may have ended up in the right place, or there may have been a good basis for you ending up there, but we don't know that you did it exactly properly. And we're going to make you go through a trial. And that flies in the face of Harlow and the whole purpose of qualified immunity. And what are we going to get, as I say? We're going to have a bench trial in front of the judge, and he'll hear virtually all the same stuff. We've had tons of discovery. And he's going to say, well, I might have done it differently myself. And so he finds that he would have classified him as a resident, but it's not objectively unreasonable. Well, certainly there are enough facts in those depositions to say it's objectively reasonable to classify him as a nonresident. And I think when I say you have to, obviously, it's awkward for me to say that, but I think Harlow and the whole theory of qualified immunity requires that you do that. Otherwise, you're saying, well, the result may have been okay, but we're going to put you through a trial and discovery and put your assets at risk and the whole thing, and that's just not the purpose of qualified immunity. I hope they do overturn Saussure, because I think it would solve this problem. It wouldn't solve it. It's just a question of whether you can just start with the issue of qualified immunity and not have to decide the constitutional issue first. That wouldn't help. I might say it's judges' time, but nobody else. And I would be wrong. Okay. I've already gone over my time. Thank you. It was very, very interesting. And we'll see you next time. Not necessarily. Yeah. Please, don't spoil my. But if you give somebody a judgment for the plaintiff, then that would avoid any more of it. You're giving me heart failure. What amazes me is after the, what I consider clarity in Vlandis in 1973 and this Court's opinion in 2001 is that. Unpublished memorandum disposition in 2001. Pardon? I think it was an unpublished memorandum disposition in 2001. The case I'm citing. Oh, I'm sorry. I thought you meant in this case. Yeah, I'm talking about Carlson v. Reed. I apologize. Not the plaintiffs. But all of that, 18 years, not 18 years yet, 92, 16 years, seven years of litigation. We can't stop this. I mean, last time I checked. Let me ask you about what seems to be the basic difference here. Is it your position that regardless of whether they could have disqualified or treated your client as an out-of-state student in the absence of this rule, that you should prevail because they applied an unconstitutional rule to exclude him? Absolutely. And Judge Fletcher, I think. Well, that's the difference. The other side is saying that even if the rule is unconstitutional, you don't win if, had they applied the proper rule, and forget the seven months, forget any of that, but the other things. Did he register a card? Did he vote? Did he move? All of those things. If they had applied all the other factors, they would not have treated him as an in-state student. They say that they could prevail on that. Your position is they couldn't prevail on that because they excluded him on an unconstitutional basis. Correct. And I think, Judge Fletcher, you just defined my position, our position absolutely, and I think Judge Fletcher pierced their position perfectly. And the problem. I'm so glad. Well, the problem I have with that is they're just what they're really trying to say is with this judge. I mean, I think what Mr. Schramm was trying to say eloquently is with this judge, they don't stand a chance. So what if the qualified immunity shield doesn't work? I think he was saying the opposite. I think he was saying if we go back and actually get our case. Well, they meaning depends on who they is. I think it depends on who the predicate is. Right. I agree. He's just saying we don't stand a chance, and I agree with this. But I guess, you know, it boils down to everybody's talking past each other on the facts. So and I don't think anyone disagrees that if you have an irrebuttable presumption, you know, that it's irrebuttable that it would violate the law. They're saying that it's not. It's a summary judgment. We've got overwhelming evidence that it was. So in taking the facts most favorable to the plaintiff, then we have to say, in your view, we have to be policy or benchmarking is one that says the seven credits is a make or break situation. Right. When you look at the evidence in the light favorable to us, most favorable to the plaintiffs, you can't conclude anything that this university very well may have been applying an irrebuttable presumption. The constitutional question is not were they denied in-state tuition, which is their defense. They're trying to argue that that's the constitutional question. It isn't. The constitutional question is were they denied due process. I mean, in that respect, I kind of disagree with you, Judge Fletcher, that DeAngelo is almost the perfect victim because she's exactly the kind of person they wanted to affect in the way they affected her. She never had a chance to prove anything because she was told at every stage through publications, irrebuttable, don't come. But when you look at her factual scenario, she moved there. She moved her children there. She took up residence there. She lived there. After she graduated, she stayed there for a number of years. I mean, she was a Montana resident in every measurement. I have a different question that may recast this. If instead of looking at this six-credit rule as an irrebuttable presumption, what if we look at it as a definitional matter? Let me back up and ask the question in a way that will frame it in the way that I'm thinking about it, at least tentatively. I mean, there are various ways in which a state can define whether someone is or is not a resident for purposes of non-resident tuition. And a whole range of these definitions are constitutionally permissible. So, for example, if the state of Montana says, listen, if you have any of the three indicia, you are an in-state. If you have a driver's license, if you vote in the state, if you pay taxes in the state, income taxes in the state, you're an in-state resident. Those are all permissible. Or they can make it stricter and they say, well, listen, if you have an out-of-state license, driver's license the whole time you're here and you pay income taxes out-of-state, I don't care what other factors you have, you are not a state resident for the purpose of tuition. Why is it not permissible as a definitional matter for the state to say, I don't care whatever else you have, if you take full-time courses at the University of Montana, defined as six credits or more, you are not a resident. It's not a sort of a presumption. It's a definition. Why is that an impermissible definition? That actually, I thought of that last night. It came up in cases, and I think that it's touched on in Philandus. They say that the reason why you can't throw that broader net, because you know when you throw that broader net, you're probably going to catch all of the non-residents, which is your intent. The problem is, with that kind of a definition, that broader net catches legitimate residents. Well, but here's my question. You say catches legitimate residents. I'm asking you, why is that an illegitimate definition of who is or is not? I mean, what's the constitutional standard as to how far Montana may not go in saying someone is not a resident? Because somebody that was born in Montana and left but then returned, and you could be a resident 25 years down the road and still not meet the definition of a resident if it were defined in that fashion. I mean, the basic reason you can't create that definition is that is by definition an irrebuttable presumption, and it doesn't serve the purpose. But you see, most irrebuttable presumptions are aimed at categories that are more stable. So if I'm trying to figure out irrebuttable presumption as to whether you are or are not an American citizen, I mean, there's a set of criteria out there by which I can determine whether in fact you are an American citizen, and I've got irrebuttable presumptions or presumptions leading me to that. But that's the criteria that lead me to decide whether or not you're an American citizen. But here we're doing something that can be defined in many ways, and I'm trying to figure out why it is impermissible to define you as a nonresident solely by virtue of the fact that you continue to take too many credits. In fact, the court in Salphy v. Weinberger, U.S. Supreme Court case 1975, they approved just that for Social Security benefits with the nine-month marriage requirement for Social Security death benefits. But I think it's pretty clear from that distinction and even this Ninth Circuit's interpretation of that, that definition might serve your purpose, but it does, and I'm using your example, it does clearly also catch legitimate residents for every purpose. But where are you getting your definition of legitimate resident from? Well, every criteria other than your definition. I mean, somebody that has been, you could have a person 65 that's been in school for 20 years, owns a ranch, has children, grandchildren, has paid 20 years of taxes, has no connections with any other state, has a driver's license, votes, has his cars registered in the state, and could never gain Montana residency under that definition. And that's an absurdity. Why couldn't they gain it because at least if it's a definition and the way it's applied, the burden shifts to that person to show all the other indicia, and then they could say, you know, sure, I fall in that category of a definition, but I have A, B, C, D, E, F. Well, you're saying if they show the other indicia, and my response is simple, the university recently made a significant change to the residency regulation. Attendance will interrupt the 12-month waiting period and will make a student ineligible for a change in status. That's the rule in Montana. Even if you showed all the other factors, that's their writing. They wrote that letter. The director of admissions, and that's the way the rule is applied in Montana. What record reference are you referring to? This is a letter from the director of admissions, University of Montana, dated December 10, 1992. This was sent to the people that apply the rule. I mean, the rule on its face, I think. What's in that record reference? I mean, the citation? I believe it's docket number 82, not 82, docket 76. Is that part of the summary judgment motion? No. Yes. It's, I think, the statement of undisputed facts, and it's at tab 4. Okay. So that's the defendant's statement of undisputed facts? Or genuine. It must be our response to genuine issues of fact. You had a statement of genuine issues of fact. Right. I have it at docket 76. I don't know what the title of the document is. In summary, the crazy thing, because we've seen the law school catalog, we know that there's a constitutional violation. It's violating that due process right to challenge and present any evidence. These people are not allowed to present any evidence, and it's kind of like in Clue. We know Colonel Mustard did it with the wrench in the library. The problem is we can't get our day in court. Just as the students weren't allowed to get their day in court to prove their residency, we can't here. Seven years, and I don't doubt we'll be back a fourth time if it is remanded. Do we have a motion for summary judgment? We do. We have a motion for summary judgment and a motion for class certification, and last time we were here on two cases because we tried to get around the issue of the current judge, and in that case they said, you know, this will probably be certified as a class, so it's not necessarily important you folks are being dismissed out. Are you appealing the denial of the summary judgment in your favor? And the class certification. We appealed it and we briefed it, and we have all three times we've been here. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, McKeown, Fletcher